Filed 1/16/14  P. v. Perkins CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B250705 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. BA409287) |
| MICHAEL ANTHONY PERKINS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Charlaine F. Olmedo, Judge.  Affirmed.

California Appellate Project, Jonathan B. Steiner and Richard B. Lennon, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant, Michael Anthony Perkins, appeals from the judgment entered following his plea of guilty to selling, transporting or offering to sell cocaine base (Health & Saf. Code, § 11352, subd. (a)) (count 1) and his admission that, because he had suffered prior convictions within the meaning of Penal Code section 1170, subdivision (h)(3), any sentence imposed for his conviction of count 1 would be served in state prison. The trial court sentenced Perkins to four years in prison. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*[1]

In March 2013, Los Angeles Police Officer Edgar Ramos was assigned to the "gang narcotics division buy team." Ramos had been working "in narcotics" for the previous five years, had conducted over 100 "buy/bust operations for rock cocaine," had completed a "five-day narcotics school," had made numerous arrests for the sale of narcotics and had testified as a narcotics expert over 100 times.

At approximately 6:55 p.m. on March 21, 2013, Ramos was working in an "undercover capacity" near the intersection of Crenshaw Boulevard and 28th Street. Perkins was standing in front of a liquor store at the southeast corner of the intersection and the officer decided to approach him. Ramos walked up to Perkins and asked Perkins if he knew where Ramos could get "a 20," or "$20 worth of narcotics." Perkins asked the officer if he could walk a block and when Ramos told Perkins that he could, Perkins escorted Ramos north on Crenshaw, past Adams to an area near the 10 Freeway. Perkins asked Ramos for the money and Ramos gave to Perkins a prerecorded $20 bill.

After taking the $20 bill, Perkins walked down the sidewalk adjacent to the freeway until he reached a man named Farley who was sitting down on the walkway. Perkins "tossed" the United States currency into Farley's lap and Farley handed to Perkins an object. When Perkins walked back to where Ramos was standing, he told Ramos he had the drugs, but that they had to walk back to the liquor store before he could give them to him. As the two men walked toward the liquor store, they came to an

---

[1]    The facts have been taken from the transcript of the preliminary hearing.

alleyway. There Perkins handed to Ramos a "black plastic bindle containing off-white solid rock cocaine." Because Perkins wanted Ramos to smoke the cocaine with him, something Ramos could not do, Ramos gave to Perkins a marked $5 bill as "payment for assisting [in] the transaction."

Later, Los Angeles Police Officers Bonluzo and Snyder stopped Perkins. Snyder recovered a $5 bill from Perkins which was verified as the marked bill which had been given to him by Ramos. From the sidewalk near where Perkins had been standing, Officer Bonluzo found a black, plastic bindle which contained an off-white solid resembling rock cocaine similar to the bindle Perkins had given to Ramos.

2. *Procedural history.*

On April 23, 2013, an information was filed in which Perkins was charged with one count of the felony of selling, transporting or offering to sell a controlled substance, cocaine base, in violation of Health and Safety Code section 11352, subdivision (a). It was further alleged that, since Perkins previously had been convicted of two counts of robbery (Pen. Code, § 211), any time imposed for the violation of the Health and Safety Code would be served in state prison pursuant to Penal Code section 1170, subdivision (h)(3). In addition, it was alleged Perkins previously had been convicted of three felonies, two robberies and one assault with a semiautomatic firearm (Pen. Code, §§ 211, 245, subd. (b)), within the meaning of the Three Strikes law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). Finally, it was alleged Perkins had suffered eight prior convictions for which he served terms in custody within the meaning of Penal Code section 667.5, subdivision (b).

At proceedings held on July 1, 2013, the district attorney indicated the parties had agreed upon a disposition of the matter. Although he faced a maximum term of 18 years, Perkins would plead guilty or no contest to count 1, selling, transporting or offering to sell cocaine base and, in exchange, he would be sentenced to the mid-term of four years in state prison. The remainder of the allegations would be dismissed.

Perkins waived his right to a jury or court trial, his right to confront and cross-examine the witnesses against him, the right to use the court's subpoena power to procure

3

witnesses and evidence in his behalf and his right against self-incrimination. After the prosecutor then advised Perkins that, as a result of his plea, he would be required to register as a narcotics offender and ordered to pay a $50 laboratory analysis fee (Health & Saf. Code, § 11372.5), a $40 court operations assessment (Pen. Code, § 1465.8, subd. (a)(1)), a $30 criminal conviction assessment (Gov. Code, § 70373), a $280 restitution fine (Pen. Code, § 1202.4, subd. (b)) and a stayed $280 parole revocation restitution fine (Pen. Code, § 1202.45), Perkins pleaded guilty to one count of the felony of the sale, transportation or offer to sell a controlled substance, cocaine base, in violation of Health and Safety Code section 11352, subdivision (a) and admitted that, since he had suffered prior convictions within the meaning of Penal Code section 1170, subdivision (h)(3), any sentence imposed for his conviction of count 1 would be served in state prison. Perkins's counsel joined in the waivers, concurred in the plea and stipulated to a factual basis for the plea. The trial court then accepted the plea and found Perkins guilty of violating Health and Safety Code section 11352, subdivision (a).

At the same proceedings, the trial court sentenced Perkins to the mid-term of four years in prison. The court awarded Perkins presentence custody credit for 103 days actually served and 103 days of good time/work time, or 206 days. The trial court, in response to the People's motion, then struck pursuant to Penal Code section 1385 all the remaining allegations.

Perkins filed a timely notice of appeal and request for a certificate of probable cause on July 26, 2013. The notice indicated the appeal was "based on the sentence or other matters occurring after the plea" and challenged the "validity of the plea or admission." On August 7, 2013, the trial court denied the request for a certificate of probable cause.

## CONTENTS

After examination of the record, appointed appellate counsel filed an opening brief which raised no issues and requested this court to conduct an independent review of the record. By notice filed November 1, 2013, the clerk of this court advised Perkins to submit within 30 days any contentions, grounds of appeal or arguments he wished this

4

court to consider. On December 4, 2013, Perkins submitted a handwritten letter in which he asserted he had never before been arrested for the possession or sale of drugs and that, on this particular occasion, he had not sold narcotics. He had simply agreed to assist Ramos purchase drugs because he "really needed the money at the time." According to Perkins, Ramos did not pay Perkins for drugs, but for his assistance in obtaining drugs. Under the circumstances, Perkins argued he should not have been charged with the sale of drugs, but merely with their possession.

A review of the evidence establishes that, although Perkins did not initiate the sale of narcotics, he nevertheless violated Health and Safety Code section 11352, subdivision (a) by assisting in the sale of and transporting the cocaine base. Health and Safety Code section 11352 subdivision (a) provides in relevant part: "Except as otherwise provided in this division, every person who transports, . . . , sells, furnishes, administers, or gives away, or offers to transport, . . . , sell, furnish, administer, or give away . . . any [specified] controlled substance . . . shall be punished by imprisonment . . . ." Here, Perkins assisted in the sale of, offered to transport and did transport, cocaine base between Farley and Ramos. Accordingly, the charge alleged in count 1 and Perkins's plea of guilty to it are substantially supported by the evidence. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206; *People v. Holt* (1997) 15 Cal.4th 619, 667.)

## REVIEW ON APPEAL

We have examined the entire record and are satisfied counsel has complied fully with counsel's responsibilities. (*Smith v. Robbins* (2000) 528 U.S. 259, 278-284; *People v. Wende* (1979) 25 Cal.3d 436, 443.)

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ALDRICH, J.


We concur:


KLEIN, P. J.



KITCHING, J.

6